```
                UNITED STATES DISTRICT COURT FOR THE
                       DISTRICT OF NEW HAMPSHIRE
```

USCOC of New Hampshire,
RSA #2, Inc., d/b/a US Cellular

    v.                                       Civil No. 05-cv-327-PB

Town of Bow


**REPORT AND RECOMMENDATION**

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction (document no. 38). Intervenors also move to dismiss for the same reasons, citing the same cases, and making the same arguments as the Town of Bow (document no. 48). Plaintiff, of course, objects to both motions (document nos. 42 and 49). For the reasons set forth below, I recommend that the motions to dismiss be denied.

Facts

The critical facts are not in dispute.

At a regular meeting on May 17, 2005, of the Town of Bow's Zoning Board of Adjustment ("ZBA"), a public hearing was held regarding US Cellular's request for a variance to erect a 125 foot cell phone tower on a parcel of land located in a rural zoning district in western Bow. See Complaint ("document no.

1"), ¶ 30; Town of Bow's Motion to Dismiss, ("Document no. 38"), Exhibit 2.  The minutes of that meeting reflect that the ZBA had walked the site on January 15, 2005, and that the May 17 hearing was a continuation of the ZBA's April 19, 2005 hearing.  See id. Defendant represents that the ZBA "held several public meetings in which it heard testimony from plaintiff's agents, abutters/ interested residents and experts hired to assist the Board with this application."  Memorandum of Law in Support of Town of Bow's Motion to Dismiss, Document no. 38, Exhibit 1 ("38-1") at 2.  A variance would be granted if plaintiff were able to show that it satisfied the four criteria justifying a variance outlined in defendant's zoning ordinance, Article 13.02.B.2.  See Document no. 38, Exhibit 2.

At the May 17 meeting, a "straw poll vote" indicated the ZBA determined that plaintiff had met the following two hardship factors, which weighed in favor of granting the requested variance:

Article 13.02.B.2. –

a. Denial of the variance would impose unnecessary hardship upon the applicant in that:

    i.   enforcement of the zoning restriction involved, as applied to the applicant's property, would interfere with the

>           applicant's reasonable use of its property,
>           having regard for the unique setting of the
>           property in its surrounding environment;
>
>     ii.   no fair and substantial relationship exists
>           between the purposes of the zoning ordinance
>           and specific restriction on the applicant's
>           property as to which the variance is sought.

The ZBA concluded the remaining criteria, however, had not been met.  These included:

>   Article 13.02.B.2. –
>
>   a.  Denial of the variance would impose unnecessary
>       hardship upon the applicant in that:
>
>       iii.  approval of the variance will not injure
>             the public or private rights of others;
>
>   b.  Authorization of a variance will not be contrary to
>       the public interest; and
>
>   c.  The spirit of this Ordinance shall be observed and
>       substantial justice done in the authorization of a
>       variance; and
>
>   d.  No diminution in the value of surrounding properties
>       would be suffered as a result of the authorization of
>       a variance.

See Document no. 38, Exhibit 2.  Accordingly, the ZBA issued a Notice of Decision on May 20, 2005, denying plaintiff's application for a variance from the local zoning ordinance to construct its requested cell tower, finding plaintiff had not satisfied Article 13.02.B.2.a.iii, b, c and d.  See id.

U.S. Cellular moved for rehearing.  See Document no. 1, ¶ 31; document no. 38-1 at 3.  Certain "interested parties," who are the intervenors here, also moved for a rehearing; they sought review of the two hardship factors which the straw pole vote had approved, Article 13.02.B.2.a. i and ii.  See id.  On July 19, 2005, the ZBA conducted a public hearing on the motions for reconsideration.  See id.  On August 23, 2005, the ZBA held a "public, deliberative session on plaintiff's application for a variance," id., and voted to adopt a ten-page written decision which again denied the requested variance.  Document no. 1 at ¶ 33; Document no. 38-1 at 3.  That decision was far more detailed than the first and affirmed the prior ruling in part and reversed it in part.  The two matters on which the ZBA reversed itself on rehearing were the two matters which had been approved by the May 17 straw poll vote, set forth in its Article 13.02.B.2.a.i. and 13.02.B.2.a.ii.  See document no. 38, Exhibit 3 at 3-4.

Plaintiff brought this suit without a further request for rehearing.

## Discussion

The key question is whether the ZBA's reversal of position on the first two "hardship" factors required plaintiff to seek a

rehearing before the ZBA, or whether the August 23, 2005 decision can be deemed the ZBA's "final action" on the application. This court has jurisdiction over the matter only after a "final action" by the local zoning authority. See 47 U.S.C.A. § 332(c)(7)(B)(v) (2001) (permitting "[a]ny person adversely affected <u>by any final action</u> or failure by a state or local government or any instrumentality thereof that is inconsistent with this subparagraph . . . to commence an action in any court of competent jurisdiction." (emphasis added)). The case is not ripe for review for purposes of Article III's "case and controversy" requirement unless the ZBA was given the opportunity to "arriv[e] at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question." <u>Williamson County Reg'l Planning Comm'n v. Hamilton Bank</u>, 473 U.S. 172, 191 (1985); <u>see also</u> <u>Sprint Spectrum L.P. v. City of Carmel</u>, 361 F.3d 998, 1002-04 (7th Cir. 2004) (following <u>Williamson County</u> to construe when a case arises under § 332(c)(7)); <u>Omnipoint Commc'ns v. Zoning Hearing Bd.</u>, 4. F. Supp. 2d 366, 370 (E.D.Pa. 1998) (dismissing claim on ripeness grounds because local land use authorities had not rendered a final decision). The parties dispute whether the August 23, 2005

decision was a "final action," for purposes of triggering this court's jurisdiction.

The Telecommunications Act (the "TCA") does not define "final action," see 47 U.S.C.A. § 153 (2001), nor does the specific provision within the TCA governing mobile services. See id. § 332(c)(7)(C) (defining certain terms). The few cases on point are unanimous that, based on legislative history, "'final action' means 'final administrative action at the State or local governmental level'." Sprint Spectrum, 361 F.3d 998 at 1004 (quoting H.R. Conf. Rep. No. 104-458, at 9 (1996)); see also AT&T Wireless PCS, Inc. v. Town of Porter, 203 F. Supp. 2d 985, 989 (N.D. Ind. 2002) ("final action" is final administrative action at the local level); Laurence Wolf Capital Mgmt. Trust v. City of Ferndale, 176 F. Supp. 2d 725, 727 (E.D. Mich. 2001) (same). That "final action" must be a written decision, "supported by substantial evidence," 47 U.S.C. § 332(c)(7)(B)(iii), so the reviewing court is in a position to assess the merits of the decision below. See id. at 727; see also Nat'l Tower, LLC. v. Plainville Zoning Bd. of Appeals, 297 F.3d 14, 21 (1st Cir. 2002) (explaining scope of written decision). The existence of a final administrative action enables a party to

seek review in federal court without needing to exhaust State court remedies. See Williamson County, 473 U.S. at 193 (explaining "finality" provides a definitive position on the issue which gives rise to an actual, concrete injury while "exhaustion" refers to review procedures the injured party may pursue); see also AT&T Wireless, 203 F. Supp. 2d at 989 (distinguishing the need to exhaust administrative remedies to reach a final decision from an exhaustion of state judicial review procedures).

Under New Hampshire law, parties aggrieved by a zoning board's decision may seek review pursuant to three statutes which work in tandem: N.H. Rev. Stat. Ann. ("RSA") §§ 677:2, 677:3 and 677:4. RSA § 677:2 sets forth the procedures for seeking a rehearing of any matter resolved by a zoning board's decision; RSA § 677:3 provides the details of what the motion for rehearing must include and how the zoning board must respond to it; and RSA § 677:4 allows for an appeal from a decision on a motion for rehearing to the superior court. "Final administrative action" is determined by RSA 677:3, which provides that no basis for a decision can be appealed to a court unless and until it has been challenged in a motion for rehearing before the local zoning

authority.

> No appeal from any order or decision of the
> zoning board of adjustment, a board of appeals,
> or the local legislative body shall be taken
> unless the appellant shall have made application
> for rehearing as provided in RSA 677:2; and, when
> such application shall have been made, no ground
> not set forth in the application shall be urged,
> relied on, or given any consideration by a court
> unless the court for good cause shown shall allow
> the appellant to specify additional grounds.

RSA 677:3, I (1996).

Defendant and intervenors rely on this language to argue that plaintiff, as appellant, was required to seek another rehearing on the two issues which the ZBA reversed in its August 23, 2005 decision.  Those issues were the two hardship factors on which plaintiff had prevailed initially and, therefore, had not sought a rehearing.  Although the ZBA in fact reconsidered these two issues, it had been the interested parties, not plaintiff, who had applied for a rehearing on them.  Movants argue that because plaintiff had not sought a rehearing on the first two hardship issues, Articles 13.02.B.2.a.i. and 13.02.B.2.a.ii., it must apply again for another rehearing on those two issues, in order to obtain the "final decision" of the ZBA needed before this court has jurisdiction to review the application.

In support of their position, defendant and intervenors rely

on the following language in Dziama v. City of Portsmouth, 140 N.H. 542, 545, 669 A.2d 217, 219 (1995):

> RSA 677:3 requires the aggrieved party to file a new motion for rehearing that raises any new issues that are thrust upon the appealing party [by the zoning board's decision upon rehearing].

Movants assert that when the ZBA reversed itself on the two hardship factors, it "thrust" new "aggrievements" upon plaintiff that Dziama requires be reconsidered before an appeal may be taken. The language in Dziama must be read in context. In Dziama, the court attempted to clarify its prior decision in Shaw v. City of Manchester, 118 N.H. 158, 160, 384 A.2d 491, 493 (1978), where the court held that when the ZBA reverses itself and thereby creates a newly aggrieved party, that party also must request a rehearing before filing an appeal. Dziama explicitly expanded the rule of Shaw to "circumstances under which the board's decision . . . creates a new aggrievement without creating new aggrieved parties." Dziama, 140 N.H. at 545. Dziama stands for the proposition that where "[t]he aggrieved party remained the same, but . . . upon rehearing, it was aggrieved by a substantive issue rather than a procedural issue," that party must seek a new rehearing. Id.

9

Dziama arguably is factually distinguishable from the instant matter, because, unlike here where the merits were considered both initially and on rehearing, there the zoning board did not consider the merits of the application until the rehearing, having denied the request initially on procedural grounds.  The court in Dziama dismissed the appeal and remanded, to give the zoning board "'the first opportunity to pass upon any alleged errors in its decisions so that the court may have the benefit of the board's judgment in hearing the appeal.'"  Id. at 544 (quoting Fisher v. Town of Boscawen, 121 N.H. 438, 440, 431 A.2d 131 (1981)).  Despite this factual distinction, the Dziama court almost anticipated the situation here, when it explained "[a] similar situation would have occurred if the board's original decision had been a denial on the merits based on one issue, and following rehearing, the board had admitted its error as to that issue but had denied the petition on the merits based on a new second issue."  Id. at 545.

If that were the latest pronouncement from the New Hampshire Supreme Court, it might end the matter.[1]  Since Dziama, however,

---

[1] Even the Dziama dictum, however, assumes the denial on the merits would be on "a new second issue," id. (emphasis added), not a change in position on the same issue, as is the case here.

the Court has decided <u>McDonald v. Town of Effingham Zoning Bd. of Adjustment</u>, 152 N.H. 171, 872 A.2d 1018 (2005), which further clarified when a rehearing is necessary before an appeal is appropriate, on facts similar to those presented here.  In <u>McDonald</u>, the plaintiff had filed an application for a variance which was denied on the merits.  The plaintiff filed a timely motion for rehearing, which the zoning board considered and also denied.  In that decision, the zoning board concluded plaintiff had not presented any new evidence warranting a change in the original denial, plus it determined there was an additional basis to deny the application.  <u>See</u> <u>id.</u> at 172.  Plaintiff next appealed to the superior court, which dismissed the case for lack of jurisdiction based on <u>Dziama</u>, because plaintiff had not first sought a rehearing on the new, independent basis for the denial.  <u>Id.</u> at 173.  The Supreme Court reversed, concluding that:

> [a] literal reading of the rehearing and appeal
> statutes . . . would require a party in a case
> such as this one to simultaneously pursue an
> appeal to the superior court from the initial
> variance denial once the rehearing request was
> rejected and a second motion for rehearing to
> challenge the issue that was newly raised by the
> ZBA in its decision denying the initial request
> for a rehearing.. . .  <u>We conclude that a literal
> reading of the rehearing and appeal statues . . .
> leads to absurd results, which were not intended
> by the legislature</u>.  It would be illogical and

>
> unduly cumbersome on the parties and the judicial process for a single variance matter to be simultaneously pending before two different tribunals: the superior court and the ZBA.. . . <u>The statutory scheme for zoning appeals to the superior court does not envision a bifurcated appeal process on a single variance denial, and we will not create one</u>.

<u>Id.</u> at 174-75 (emphasis added).  Accordingly, the court remanded the case to the superior court for further consideration.

Here, in its rehearing order, the ZBA affirmed that part of its initial order that was adverse to plaintiff, but reversed itself and ruled adversely to plaintiff on the two grounds on which plaintiff had prevailed in the initial order.  If New Hampshire's statutes are read literally, the portion of the second ZBA order affirming the first order triggers the thirty day appeal period set out in RSA 677:4, while the new adverse substantive rulings would require a request for rehearing pursuant to RSA 677:2 and 3.  That is precisely the type of bifurcated review process the New Hampshire Supreme Court rejected in <u>McDonald</u>.  <u>See</u> <u>id.</u> at 176 (holding "that when a ZBA denies a motion for rehearing, the aggrieved party need not file a second motion for rehearing to preserve for appeal any new issues, findings or rulings first raised by the ZBA in that denial order.").

McDonald persuades me that under current New Hampshire law the August 23, 2005, ZBA decision was a "final action" on plaintiff's requested variance. Although plaintiff did not specifically raise the two hardship factors in its motion for rehearing, the intervenors did. As a result, each of the bases justifying a variance set forth in Article 13.02.B.2 were presented to the ZBA both initially and upon rehearing. The ZBA fully considered each of the variance criteria both initially and on rehearing, and set forth the reasons for its decision in great detail in the lengthy memorandum issued in support of the August 23, 2005 denial. Both the first and the second decisions denying the application were based on the merits of the same issues. To apply Dziama in the manner movants argue would cause a "bifurcated appeal process on a single variance denial" which the New Hampshire Supreme Court explicitly declined to create. McDonald, 152 N.H. at 175.[2]

---

[2]Although the case law interpreting RSA 677:2, 3 and 4 arguably is somewhat contradictory, further clarification of when an administrative decision is a final action can only be done by the New Hampshire Supreme Court or the State Legislature. Interpretation of state statutes or resolution of a conflict in New Hampshire law is the exclusive province of the New Hampshire courts. I conclude, however, that while the interpretation of RSA 677:2, 3 and 4 might benefit from further clarification, this matter can be decided on the law as it currently stands.

I find that the case law consistently stands for the proposition that the local zoning board must be given the first chance to review its decisions on issues, as they pertain to every party affected thereby, to create a thorough record for appellate review.  Once an opportunity for review has been afforded, "an endless series of rehearing applications," Shaw, 118 N.H. at 160, is not required.  My review of the applicable state law leads me to conclude that another rehearing on the two hardship factors was not required.  Through the local administrative process, each issue upon which the ZBA's decision was based was fully considered over the course of several meetings and two written decisions, with the assistance of testimony by both the parties involved and expert witnesses.  Neither the parties nor the issues changed.  Under these circumstances, I conclude the ZBA "has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question."  Williamson County, 473 U.S. at 191.

The intended purposes of the rehearing procedure were fully satisfied here, because the ZBA in fact had the first opportunity to correct any errors in its judgment and the appellate court has

a full record upon which to review the ZBA's decision. Whether plaintiff adequately demonstrated hardship as required by Articles 13.02.B.2.a.i. and 13.02.B.2.a.ii. was fully presented to the ZBA in the applications for rehearing and fully reviewed by it before its second denial was issued. Based on this, I find both the letter and the spirit of the statutory scheme have been satisfied. See RSA 677:3 (allowing appeal on issues not first presented in a motion for rehearing for "good cause").

Finally, plaintiff argues jurisdiction over this matter also arises under 47 U.S.C. § 253(a), which allows a federal court to review local zoning regulations which prevent telecommunication services from being provided. See 47 U.S.C.A. § 253(a) (removing barriers to interstate or intrastate telecommunications service). This argument founders on the facts. The record demonstrates that defendant's zoning ordinance does not preclude wireless telecommunications service, because U.S. Cellular already operates in Bow and is seeking this variance to install another cell phone tower to improve the service it provides and to compete with other wireless communications providers in the area. Accordingly, § 253(a) is inapposite.

Conclusion

I find that the August 23, 2005 decision by the ZBA denying plaintiff's requested variance was a final action and that no further rehearing of the two hardship factors was required under New Hampshire law. Accordingly, this case is ripe for review and the court may exercise its jurisdiction over the matter. I, therefore, recommend that both defendant's and intervenors' motions to dismiss (document nos. 38 and 48) be denied.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See <u>Unauthorized Practice of Law Comm. v. Gordon</u>, 979 F.2d 11, 13-14 (1st Cir. 1992); <u>United States v. Valencia-Copete</u>, 792 F.2d 4, 6 (1st Cir. 1986).

/s/ James R. Muirhead
James R. Muirhead
United States Magistrate Judge

Date:   January 10, 2007

cc:     James P. Bassett, Esq.
        Paul T. Fitzgerald, Esq.
        Steven E. Grill, Esq.
        Jeffrey C. Spear, Esq.